José Benet Colón, Appellant, *v.* Registrar of Property of San Juan (Second Section), Respondent.

No. 1172. Submitted November 5, 1945.—Decided December 14, 1945.

*José Benet Colón, in pro. per.,* for appellant.

Mr. Justice Todd, Jr., delivered the opinion of the court.

José Benet Colón, owner of a lot in Hato Rey, purchased a portion of another adjacent lot from Ignacio Delgado and consolidated both parcels so as to make a single property. In order to record this segregation and consolidation, Messrs. Delgado and Benet sought from the Planning Board the corresponding certificate for recordation. The Board approved report L–55 entitled "Approval of mere segregation in the

Military Road between Hato Rey and Río Piedras on February 23, 1945," which in its pertinent part reads thus:

"Since the purpose of this segregation is to improve the formation of a lot, without prejudice to the area or to the formation of the lot from which the segregation is made, the provisions of Article No. 13 of the Subdivision Regulations as amended, are applicable to this case.

"This Board wishes to inform that the Master Plan for the Major Thoroughfares for the Metropolitan Area of San Juan already adopted by this Board, *includes* a highway called in said document, Express Highway, Southern Portion, *which is planned* along the sections where the lots, the subject matter of this subdivision, are situated. Even though at this time *the drawing showing the precise location of the servitude of right of way needed for said highway has not yet been prepared,* this Board *recommends* that before commencing any construction in the first 26 meters of these lots, that is, between the present military road and the rear of said lots, the surveys or maps be consulted as to this particular.

"By virtue of the provisions of Article 13 of the Subdivision Regulations, as amended, the Planning, Urbanizing, and Zoning Board of Puerto Rico, hereby APPROVES the aforesaid subdivision, it being DISPENSED from the presentation of a registration plat.

"A copy of this decision should be presented by the interested party to the registrar of property in order that said officer *may record this subdivision without the need of presenting a registration plat.*" (Italics ours.)

Upon presenting the deed of segregation, sale, and consolidation for recordation, the registrar recorded it but stated that in view of the certificate of the Planning Board "said property was subject to . . . a mention of *projects of servitude* of right of way for a public highway, *still in preparation* by the Planning Board of Puerto Rico." (Italics ours.)

When Mr. Benet sought the cancellation of the entries of servitude the registrar refused it on the ground that the report approved by the Planning Board *"has the same effect as an entry of servitude,* inasmuch as said Board is duly au-

thorized to do so under Act No. 155 of May 14, 1943. and the regulations approved September 5, 1944.'' (Italics ours.)

Mr. Benet has taken the present appeal and prays that the cancellation of the entry of servitude be ordered, alleging that such a lien has never been constituted inasmuch as the report approved by the Planning Board did not have the effect of constituting said lien and that, if such was its intention, the same was illegal.

The respondent registrar on the other hand argues that, according to §§ 8 and 9 of the Puerto Rico Planning, Urbanizing, and Zoning Act, as amended by Act No. 155 of May 14, 1943[1], the Planning Board is authorized to ''subordinate the approval of a subdivision to which the property is *presumptively* subject, to the right of way of a road branch'' and the registrar is bound to state in the record thereof that condition, according to §§ 9 and 15 of the Mortgage Law and its Regulations, respectively. (Italics ours.)

The question to be decided seems to us very simple. Does a mere recommendation included in the report approved by the Planning Board have the effect of authorizing the registrar to enter in the record sought a mention of servitude on appellant's property? In our opinion this question should be answered negatively.

---

[1] ''Section 8.—*Master Plan.*—The Board shall prepare and adopt a master plan which shall show, with any accompanying maps, charts and explanatory matter, the Board's *recommendations* for the development of Puerto Rico and may include the *general location, character, and extent* of the land, minerals, water, vegetation, and animal life and *their present and possible future utilization* for mining, power, irrigation, flood control, navigation, drainage, domestic and industrial uses of water, fishing, recreation and the general welfare; and of residential, commercial, recreational, manufacturing, *transportation*, communication, institutional, governmental, and public-utility facilities and operations by whatever desirable categories, and their possible future utilization and development for these or other purposes and for the general welfare.

''The Board shall include in its master plan the urban, suburban, and rural parts of the Island, but the master plan of Puerto Rico need not include minor resources, uses, or facilities which are of a strictly local character. The Board may adopt the master plan as a whole or in parts and may amend, add to, or

■■ Although §§ 8 and 9 of the Planning, Urbanizing, and Zoning Act of Puerto Rico, *supra,* confer on the Planning Board power to adopt a "Master Plan" and "Urbanizing, Zoning and Land Use Plans," these Sections are not applicable, by themselves, to the situation before us, but § 11 of said Act must be also applied. It provides as follows:

"Plat or Map of Future Roads and Streets.—Making of an Official Map.—The Board may make, or request the Department of the Interior to make with funds properly transferred from its own appropriation for this purpose, *surveys for the precise locations of the lines of new, extended, or widened roads and streets of Puerto Rico, and recommend to the Executive Council for adoption a plat or plats, indicating the precise locations of future road and street lines.* For general convenience and information the Board in the same manner may establish an official map of the Island. Upon the official map there shall be shown:

"(*a*) All roads and streets existing and established by law as public roads or streets at the time of the adoption of the official map;

"(*b*) All road and street locations shown on recorded plats of subdivisions approved by the Board in accordance with the provisions of Sections 10 and 24 of this Act;

"(*c*) All road and street line plats approved by the Executive Council in accordance with the provisions of this Section and Section

precise it or any part thereof. The Board may at its own discretion prepare a separate master plan for the possible and advisable development of any municipality or its urban area, which may include resources, uses or facilities not included in the master plan of the Island, unless otherwise provided for under Section 27.

"Section 9.—*Zoning Regulations.*—Based in whole or in part on the master plan insofar as adopted by the Board, the Board shall adopt regulations establishing by districts or zones the use and development of public and private lands and buildings, for such purposes as: industry, trade, transportation, residence, public or semipublic and civic activities, and recreation; and for buildings including the height of, and area covered by buildings; the density of population; business and advertising signs, in connection with which, restrictions regarding such factors as size and projection over street lines may be adopted; proportion of the lot on which may be constructed; and the sizes of lots, courts, and other open spaces; *Provided, however,* That the zoning regulations adopted as herein provided, shall apply to urban areas only."

19 of this Act.[2]  The making or adoption of any such plat or the adoption of an official map *shall not, in and of itself, determine the construction of any road or street or the taking or acceptance of lands for such road or street purposes.''*  (Italics ours.)

This statutory provision requires the fulfilment of two conditions in the event that the Planning Board decides to establish lines of new, extended, or widened roads and streets, to wit: 1st., it may make or request the Department of the Interior to make ''surveys for the *precise* location'' of said lines and 2d, to *recommend* to the Executive Council, for adoption, a plat or plats, indicating the *precise* location of future road and street lines.  And it further provides that in the event that the Executive Council should approve any such plat it shall not, in and of itself, determine the construction of any road or street, or the taking[3] or acceptance of lands for such purposes.  (Italics ours.)

Moreover, according to § 23 of the same Act it is provided, in so far as pertinent, that:

''. . . Nor shall a building, sanitary or use permit be issued for any building or structure, or any part thereof, on any land located within the lines of a road or street *as shown on a road or street-line plat approved by the Executive Council, as provided in Section 11 of this Act . . .* ''  (Italics ours.)

It follows, therefore, that the Puerto Rico Planning, Urbanizing, and Zoning Act did not confer power on the board to

[2] Section 19, as amended by Act No. 155, *supra,* provides that:

''Executive Council Approval.—The Executive Council of Puerto Rico shall consider and adopt by majority vote, with such modifications as it considers desirable, *the plats and maps which the* Board is authorized to recommend to it under Sections 11 and may also, on appeal, overrule decisions of the Board upon public improvements and roads, as authorized in Section 22; *Provided,* That it shall give the Board twenty (20) days' notice of each change therein and an opportunity to present its views thereto.  Unless the Executive Council shall render its decision on the recommendation or appeal within forty (40) days, it shall be deemed to have approved the recommendation of the Board or to have affirmed the decision of the Board, respectively.''

[3] Even if the Act did not contain this provision, it would be thus, for compliance must be had with the Organic Act and local statutes on eminent domain.

prepare by itself surveys for new roads or streets and that, according to the facts in this case, it has not pretended to do any such thing. It has merely confined itself to reporting that there exists in the Master Plan, which it has approved pursuant to § 8, *supra*, a project to construct an express highway, southern branch, along that section wherein appellant's lot is situated, but that the drawings which precisely indicate the servitude of right of way needed for said highway has not been prepared yet. The whole proceeding is still a mere project, indefinite, without having complied with the other requirements of the statutory provisions above mentioned. This highway may or may not in the future affect a portion of appellant's lot: 1st, if the Board or the Commissioner of the Interior prepares the precise road line in project; 2d, if the Executive Council approves the plat indicating the precise location of said road. And after these prerequisites have been complied with, there are still other legal requirements which must be fulfilled for the expropriation of appellant's land before establishing the corresponding servitude of right of way. Under these circumstances, it can not be held, in any manner whatsoever, that said lot should be encumbered in the registry of property with a mention of a nonexisting servitude.

Section 475 of the Civil Code (1930 ed.) provides that: "Continuous and not apparent servitudes and discontinuous servitudes, either apparent or not apparent, can only be acquired by virtue of a title," and construing it in *Del Moral* v. *Muratti*, 34 P.R.R. 244, we held that "Since the year 1890 when the Civil Code went into effect servitudes of right of way can be acquired only by virtue of a title." To the same effect see *Trujillo* v. *López*, 45 P.R.R. 791; *Colón* v. *Plazuela Sugar Co.*, 47 P.R.R. 827, and *Miner* v. *Irizarry*, 52 P.R.R. 197.

The report approved by the Planning Board does not constitute any title of servitude of right of way nor does it have the effect of creating any easement which may be the

466

subject of an entry in the registry, inasmuch as, according to § 476 of the Civil Code "The want of a title establishing servitudes which cannot be acquired by prescription can *only* be remedied by deed of acknowledgment, executed by the owner of the servient tenement or by final judgment." (Italics ours.)

Appellant herein has not recognized the servitude nor is there any final judgment acknowledging it or expropriating a portion of the lot for public utility purposes. Neither does this report constitute one of the "conditions" contained in § 9 of the Mortgage Law which provides that "Every record made in a registry shall set forth the following details: 1.—. . . 2.—The nature, extent, *conditions,* and charges of any kind of the right recorded and its value. if it appear in the instrument," for it is not established in appellant's title that any right of servitude has been constituted on the property and we have already held that a mention "is a mere notice entered by the registrar of the *existence of an unrecorded interest.*" (Italics ours.) *Miranda* v. *Registrar,* 45 P.R.R. 385-7.

The decision appealed from must be reversed and record of appellant's title ordered free from liens.